UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EMILIA B. HAMMOND,[1]<br><br>       Petitioner,<br><br>  v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security<br>Administration,<br><br>       Respondent. | Case No. 4:16-CV-00515-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Currently pending before the Court is Darin L. Hammond's Petition for Review of

the Respondent's denial of social security benefits, filed December 1, 2016. (Dkt. 1.) The

Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and

the administrative record (AR), and for the reasons that follow, will remand to the

Commissioner with an order to award benefits.

---

[1] Emilia B. Hammond was substituted as a party for Petitioner Darin L. Hammond by the Court's order of January 31, 2018 (Dkt. 31), approving the parties' stipulated motion for substitution. (Dkt. 28.) Petitioner passed away on November 1, 2017. (*See* Notice of Death of Party, Dkt. 27.)

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on April 22, 2013, alleging disability beginning on March 4, 2013. The application was denied initially and on reconsideration, and a hearing was conducted on April 9, 2015 before Administrative Law Judge (ALJ) Michele M. Kelley. During the hearing, testimony was provided by Petitioner and vocational expert Kent Granat. The ALJ issued a decision on June 4, 2015, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied his request for review on September 29, 2016. Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 41 years of age. Petitioner's prior work experience included working as an English professor at BYU Idaho, and later, at Idaho State University. He also worked as a residential builder for a period of time.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date of March 4, 2013. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's depression, anxiety, and attention deficit disorder severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Petitioner's mental impairments under Listings 12.02 (neurocognitive disorders), 12.04 (affective disorder), and 12.06 (anxiety-related disorders). If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. In assessing Petitioner's RFC, the ALJ determines whether Petitioner's complaints about the intensity, persistence, and limiting effects of his symptoms are credible.

Here, the ALJ determined Petitioner's complaints were not entirely credible—finding the record contained very minimal objective evidence of a disabling mental impairment. As such, the ALJ concluded that the objective evidence failed to show Petitioner's symptoms prevented him from working. Additionally, upon considering the medical opinion evidence, the ALJ gave no significant weight to the opinions of Petitioner's treating psychiatrist, Dr. Kayne Kishiyama; gave partial weight to consultive psychological examiner, J.W. Casper, Ed.D.; gave some weight to the opinions of the non-treating, non-examining medical sources, Michael Dennis, Ph.D., and Barney Greenspan, Ph.D.; and gave significant weight to the conclusions of the non-treating, non-examining sources, Leslie E. Arnold, M.D. and Ward Dickey, M.D. The ALJ found the medical record did not demonstrate any physical impairments.

The ALJ found Petitioner was not able to perform his past relevant work as a college professor or as a residential builder due to non-exertional limitations. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Here, the ALJ found Petitioner retained the ability to perform the requirements of representative occupations such as hand launderer, garment folder, and touch up inspector.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if

the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's

credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner contends the ALJ erred at step four for two reasons: First, Petitioner argues the ALJ erred in making an adverse credibility finding. Second, Petitioner claims the ALJ should have assigned the opinion of Dr. Kishiyama, treating psychiatrist, controlling weight, and should have assigned the opinion of Dr. Casper, consultive psychological examiner, additional weight. Because of these alleged errors, Petitioner argues the ALJ erred in determining his RFC and finding him able to perform other available work at step five. The merits of each argument are discussed in turn below.

### 1.    Petitioner's Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Id.* at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*,

119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). "The claimant is not required to show 'that [the] impairment could reasonably be expected to cause the severity of the symptom […] alleged; [he] need only show that it could reasonably have caused some degree of the symptom.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

Unless there is affirmative evidence the claimant is malingering, the ALJ cannot reject the claimant's testimony about the severity of the symptoms without providing clear and convincing reasons supported by substantial evidence. *Burch*, 400 F.3d at 680. "General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

Notably, when the symptom testimony is in regard to psychological impairments, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d 995 at 1017. Psychological impairments regularly include cycles of improvement countered by periods with debilitating symptoms. *Id*. In these circumstances, an ALJ commits error by picking out isolated instances of improvement and treating such instances as a basis to conclude a claimant is able to work. *Id*. "While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must in fact constitute examples of a broader development to satisfy the applicable clear and convincing

standard." *Id.* at 1018 (internal quotations omitted).

In this matter, Petitioner struggled with three psychological impairments recognized as severe by the ALJ: depression, anxiety, and attention deficit disorder. Petitioner testified that these conditions affected his ability to work, remember, complete tasks, concentrate, understand, follow instructions, and get along with other people. The major impact from his impairments came from what Petitioner described as "crashes." These were periods of time that, "for spells of up to a week," Petitioner was debilitated by his depression and anxiety; he was "completely unable to leave the bed." (AR 206.) During such periods of time, as Petitioner testified, he had to be reminded to bathe, and he slept for up to thirty-six hours in a row—waking only to use the bathroom. (AR 207; 208; 51.) During the hearing, Petitioner testified that he was frequently having crashes rendering him unable do anything, other than sleep, for up to six to seven days at a time. (AR 44-45; 50.) He reported having crashes one to three times a month. *Id*. He testified that, when he came out of a crash period, he experienced lagging effects such as fatigue and poor concentration. *Id.*

Like many forms of mental illness, the symptoms associated with Petitioner's depression and anxiety waxed and waned. During the time periods when he was not completely debilitated by a crash, Petitioner reported helping his wife with the care of their four children by occasionally preparing meals, sharing the responsibility of driving them to school, and performing other basic tasks. *Id.* at 207. He testified also that he would care for the family pet during these stable periods. *Id.* at 217. Even when he was

able to contribute, however, his wife helped him with his tasks. *Id.*; AR 193-96.

Petitioner reported further that he occasionally did other chores, such as yard work or the

dishes. (AR 208.) Yet, he testified that, to perform any such chores or duties, he needed

reminders, motivation, and prompting from his wife, and was still often unable to

complete them. *Id.* He was unable to pay the household bills because the task triggered

his anxiety. *Id.* at 196.

Finally, in addition to a host of other psychotherapeutic drugs, Petitioner testified

to using Adderall as a stimulant. The Adderall helped prevent crashes and kept him

awake longer. (AR 56; 349.) The impact of Petitioner's psychological impairments upon

his life were tangible: Petitioner testified to being terminated from his teaching position

at BYU-Idaho. He was also unable to complete a one-year teaching contact he had

secured at Idaho State University. In March of 2013, he self-reported to the Behavioral

Health Center in Pocatello for suicidal ideation. Petitioner was unable to return to work

thereafter due to symptoms of his anxiety and depression. *Id.* at 58-59. Petitioner testified

that, despite medications and treatment, which resulted in small improvements in his

mood, his conditions were progressively getting worse—he testified to crashing more

often and for longer periods of time. *Id*. at 55.

The ALJ concluded that, although the Petitioner's medically determinable

impairments could reasonably be expected to cause the above alleged symptoms, "the

claimant's statements about the intensity, persistence, and limiting effects of these

symptoms [were] not entirely credible for the reasons explained in [the] decision." (AR

25.) The primary reason cited by the ALJ was that the record contained "very minimal objective signs of disabling mental impairment." *Id.* The ALJ discredited evidence from several sources that supported Petitioner's allegations: medical evidence and opinions from Petitioner's treating psychiatrist and the consultive psychological examiner; and testimonial evidence provided by Petitioner's wife and sister.

The ALJ found the evidence from these sources was based primarily on Petitioner's subjective complaints. Thus, because the ALJ discounted Petitioner's credibility, she also gave little or no weight to the evidence she determined was based in whole, or in large part, on Petitioner's self-reports.

The Court finds this justification unconvincing and not supported by substantial evidence in the record, specifically because: (1) the opinions of Petitioner's physicians constituted objective medical evidence, supported by treatment notes; (2) the conclusions regarding Petitioner's daily activities were in error, as demonstrated by the personal observations provided by Petitioner's wife and sister which, in large part, were objective. Each reason will be discussed below.

As set forth above, the ALJ primarily rejected Petitioner's testimony because she found it inconsistent with the objective medical evidence in the record. In support of this conclusion, the ALJ cited examination and treatment notes describing Petitioner's status at the time of each appointment. The ALJ found that these treatment notes described Petitioner as "alert and oriented, with grossly intact cognition, no thought problems, and linear and coherent thought processes." (AR 25.) Also, treatment notes indicated

Petitioner was cooperative, pleasant, and maintained good eye contact during the appointments. *Id.* However, such observations of behavior and cognitive functioning during psychological examinations and appointments do not contradict Petitioner's reported symptoms.

An ALJ is required to view treatment and examination notes in light of the entire diagnostic record. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *and see Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200 (9th Cir. 2008). Here, when the examination and treatment notes are considered in their entirety, the record shows that although Petitioner was alert, cooperative, and presented intact cognitive abilities and lineal thought processes at the time of his appointments, he was still nonetheless suffering from regular cycles of severe depression and anxiety. For example: November 7, 2012: Petitioner was doing well, consistent use of Adderall had improved his mood, concentration, energy, and motivation. (AR 351.) January 25, 2013: Petitioner was not doing well, his "depression is much worse again." *Id.* at 354-55. March 3, 2013: Petitioner's wife called Dr. Kishiyama, her husband was not doing well. Later that afternoon in a session, Petitioner reported he had been unable to get out of bed, he felt hopeless and trapped. *Id.* at 356. He reported taking Adderall in excess of his prescription to attempt to do work. *Id.* Dr. Kishiyama noted that Petitioner had "anhedonia, feelings of hopelessness, very low energy, drive, and motivation, poor memory and concentration," and was having suicidal thoughts without intent. *Id.* Petitioner's anxiety was also high. *Id.* This was just days before

Petitioner was admitted to the Behavioral Health Center on March 7, 2013 for suicidal ideation. April 1, 2013: Petitioner's depression had increased and he was having occasional mild suicidal thoughts. (AR 361.) April 11, 2013: Dr. Kishiyama was called by Petitioner's therapist because she was concerned about Petitioner's excessive sleeping, depression, and voicing of suicidal thoughts. *Id.* at 362. March 31, 2015: Petitioner was having more frequent suicidal thoughts, had been taking up to three naps a day, and had periods where he spent six to seven days in bed at a time. *Id.* at 377-78. November 8, 2013: Petitioner was thinking about suicide "a lot," was still taking several naps each day, that his concentration and memory were poor. *Id.* at 390. May 15, 2014: Petitioner was sleeping up to 14 hours each day, despite medication to increase energy and motivation. January 12, 2015: Petitioner was doing better. *Id.* at 394.[2]

The ALJ also committed error by selecting isolated instances of improvement and treating such instances as a basis to conclude Petitioner was able to work. An ALJ may rely on examples to show why she thinks a claimant is not credible; however, she must choose evidence that shows the broader development to satisfy the clear and convincing standard. *See Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014). Here, the ALJ focused on Petitioner's cognitive and behavioral functions as presented in isolated therapy sessions. Such discrete data points do not represent the broader development of Petitioner's mental impairments.

---

[2] Such observations of Petitioner during appointments do not contradict Petitioner's testimony that his concentration, memory, and energy levels were affected when coming out of a crash period.

The ALJ found also that Petitioner's daily activities conflicted with his allegations regarding the impact and severity of his symptoms. Evidence of daily activities that are incompatible with the alleged severity of symptoms can be a basis to support an adverse credibility finding. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Daily activities may also be "grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Id.* (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)).

In this matter, the ALJ considered Petitioner's use of a computer for periods up to six hours a day, attendance at church, ability to occasionally help his wife with the care of their home, children, and the family pet, and his ability to take a vacation. The ALJ found such activities to be evidence that Petitioner's symptoms were not as severe or debilitating as alleged. However, the activities relied upon by the ALJ do not contradict Petitioner's testimony. There is no indication in the record that the activities Petitioner engaged in, often with significant amounts of help or prompting from his wife, were transferable to a working environment, or, that they comprised a substantial portion of his days. This is especially true because, during crash periods, he was not engaging in these activities at all. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014); *see also Smolen,* 80 F.3d at 1284 n. 7 ("many home activities may not be easily transferrable to a work environment"). Thus, the evidence the ALJ cites as contrary to Petitioner's allegations consists of evidence selected from periods of Petitioner's mood cycle where he was able

to contribute, albeit minimally, to his family.

For instance, the ALJ considered a function report (AR 193-201), and testimonial statement (AR 260-61), submitted by Petitioner's wife, Emilia Hammond. Mrs. Hammond reported the severity and symptomatic effects of Petitioner's depression had steadily increased over time and were then debilitating. The ALJ countered this information with the fact Petitioner had reported to Dr. Kishiyama that the medications he was taking at the time his wife gave the report, in March of 2013, had been the most effective to date. Without more explanation, the ALJ concluded Mrs. Hammond's observations "appeared to be based primarily on the claimant's subjective complaints." (AR 26.) And, although Ms. Hammond's observations were consistent with Petitioner's testimony, the ALJ found Petitioner's testimony was not supported by objective medical findings.

The conclusion that Mrs. Hammond's observations were primarily based on Petitioner's subjective complaints is patently incorrect. For instance, the letter supplied by Mrs. Hammond is comprised of many first-hand observations of her husband's daily activities and the effects his impairments had on his ability to contribute to their family over the course of their more than 20-year marriage. For example:

> I first noticed signs of Darin's anxiety and depression while in our second year of marriage. He would come home and lay in bed on a particularly bad day.

And:

> At the current time, the depression has increased and he is in bed for about

ten to twelve days out of the month. He gets up to eat at times and to go to the bathroom, but he stays in bed for seven to eight days straight each month, sometimes crashing on the weekends also.

(AR 260-61.)

As these statements indicate, much of the evidence supplied by Mrs. Hammond was based on first-hand observations. Further, although she did supply some information regarding how the Petitioner reported feeling, for example, "he says that he feels physically and mentally ill," the information does not discredit the reports of Petitioner. As the ALJ admitted, such evidence was consistent with Petitioner's testimony. (AR 27.) The same is true of the testimonial letter supplied by Petitioner's sister, Lana Weber.[3] (AR 257-58.)

As set forth above, when a claimant's symptom testimony relates to psychological impairments, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. When viewed as a whole, the record supports Petitioner's allegations regarding the severity and impact his mental health symptoms. The ALJ improperly discredited the evidence of medical and testimonial sources supporting Petitioner's testimony. Therefore, the Court finds the ALJ failed to provide clear and convincing reasons supported by substantial evidence sufficient to discredit Petitioner's credibility.

---

[3] Ms. Weber's testimonial letter is comprised of many first-hand accounts. For instance, Ms. Weber stated that 65 percent of the time she stopped to see her brother or called him on the phone he was unavailable because he was unable to get out of bed. (AR 257.) She also reported her own experience watching Petitioner's "steady decrease" in functioning—from once being a college professor to "no longer being able to function well enough to keep his job." *Id.*

2.      **Physician Testimony**

Petitioner contends also that the ALJ erred in assigning no significant weight to the opinion of his treating psychiatrist, Dr. Kishiyama, and erred in assigning only partial weight to the opinion of consultive psychological examiner, Dr. Casper. The ALJ instead gave some weight to the non-treating, non-examining Disability Determination Services (DDS) sources, Dr. Michael Dennis and Dr. Barney Greenspan. And she gave significant weight to the opinions of non-treating non-examining DDS physicians Leslie E. Arnold and Ward Dickey. (AR 27.)

The United States Court of Appeals for the Ninth Circuit distinguishes among the opinions of three types of medical sources: (1) those who treat the claimant (treating sources); (2) those who examine but do not treat the claimant (examining sources); and (3) those who neither examine nor treat the claimant (non-examining sources). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to a non-treating source. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).

If the treating source's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). If the ALJ decides not to give the

treating source's opinion controlling weight, the ALJ must consider the factors set forth

in 20 C.F.R. § 404.1527(c)(2)(i-ii) and (c)(3-6) to determining how much weight to give

the opinion instead, and how much weight to give to medical sources. These factors are:

the length of the treatment relationship and the frequency of examination; the nature and

extent of the treatment relationship; supportability; consistency; specialization; and other

factors that tend to support or contradict the opinion. *Garrison v. Colvin*, 759 F.3d 995,

1012 (9th Cir. 2014). However, in general, an examining source's opinion is entitled to

greater weight than the opinion of a non-examining source. *Pitzer v. Sullivan*, 908 F.2d

502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

Additionally, an ALJ is not required to accept an opinion of a treating source if it

is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*,

981 F.2d 1016, 1019 (9th Cir. 1992). For instance, if the record as a whole does not

support the doctor's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc.

Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not

support the doctors's opinion may include clinical findings from examinations,

conflicting medical opinions, conflicting doctor's treatment notes, and the claimant's

daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v.

Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d

595 (9th Cir. 1999).

Finally, an ALJ may reject a treating doctor's opinion if it is based "to a large

extent" on a claimant's self-reports that have been property discounted as not credible.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Importantly, however, is this distinction: A clinical interview and mental status evaluation by a psychiatrist are "objective measures" which "cannot be discounted as a self-report." *Kennedy v. Berryhill*, No. 317CV05557RJBDWC, 2018 WL 615088, at *4 (W.D. Wash. Jan. 8, 2018), report and recommendation adopted, No. 317CV05557RJBDWC, 2018 WL 593185 (W.D. Wash. Jan. 29, 2018) (citing *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields." 869 F.3d at 1049. "Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Kennedy* at *4. (internal citations omitted).

Here, the ALJ rejected the opinion of Dr. Kishiyama, Petitioner's treating psychiatrist, for two reasons (1) it appeared to be based primarily on Petitioner's self-reports rather than Dr. Kishiyama's objective findings; and (2) the opinion was inconsistent with the evidence as a whole, including the conflicting opinions of two state agency reviewing doctors who each found Petitioner able to work. Each reason will be discussed below.

Because Dr. Kishiyama's opinion was contradicted by the other doctors, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence in the record to reject it. The first reason supplied by the ALJ was that the

objective findings and observations made by Dr. Kishiyama were minimal because they were largely based on self-reports from Petitioner. (AR 25.) The ALJ found Dr. Kishiyama made the following objective findings: Petitioner displayed halted speech, "but with normal tone, good eye contact, grossly intact cognition, and linear and coherent thought processes." *Id.* The ALJ rejected the remainder of the evidence in Dr. Kishiyama's opinion.

Respondent argues the ALJ's rejection of the majority of Dr. Kishiyama's opinions was proper, because Ninth Circuit case law establishes that "a physician's heavy reliance on a claimant's subjective reports is a basis for discounting such opinion evidence." (Dkt. 22 at 5, citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010)). In *Turner*, the issue surrounded a non-diagnosed case of post-traumatic stress disorder. *Id.* The court found the ALJ reasonably rejected the evaluation of an examining physician, because it was indeed based almost entirely on the claimant's self-reports. *Id.* However, that doctor had not previously had *any* interaction with the claimant in that case. *Id.* Further, the report in question concerned a disabling back injury, yet the examining physician made no conclusions regarding the limitation at issue—post traumatic stress disorder. *Turner* is readily distinguished from the case before the Court. Unlike the physician in *Turner*, Dr. Kishiyama saw and treated Petitioner since March 25, 2010 for the exact limitations at issue in the determination of this matter. (AR 442.) Moreover, Dr. Kishiyama provided a medical opinion, in the form of the disability questionnaire, that was based on years of regularly treating Petitioner.

Additionally, because the limitations at issue in this matter are psychological impairments, it was error for the ALJ to apply the standard for self-reported information in the same fashion as reports made in regard to physical limitations. Self-reports are essential to the treatment of mental impairments. As set forth above, the Ninth Circuit has held that the rule allowing an ALJ to reject physician opinions based on self-reports does not apply in the same manner to opinions regarding mental illness. Here, the ALJ did not cite to one instance, in any of the physicians' reports or examinations, where a physician noted disbelief of such self-reports, or potential malingering by Petitioner. Therefore, the ALJ committed error by applying the incorrect legal standard in evaluating Petitioner's self-reported evidence in connection with the opinions of the treating psychiatrist, Dr. Kishiyama.

Further, as set forth above, although an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been property discounted as not credible, the standard does not apply in this case. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008.) Here, the ALJ erred by concluding Petitioner's subjective testimony was not credible for the inadequate reasons discussed above. Accordingly, the ALJ could not rely upon her erroneous credibility determination to, in turn, reject the opinion of Dr. Kishiyama.

The second reason supplied by the ALJ for rejecting Dr. Kishiyama's opinion was that it was not supported by the evidence as a whole. Items in a record that may not support a treating physician's opinion include clinical findings from examinations,

conflicting medical opinions, and the Petitioner's daily activities. As discussed above, Petitioner's daily activities do not conflict with the alleged limiting effects of Petitioner's limitations—which form the basis for Dr. Kishiyama's findings.

Next, the ALJ cited to the conflicting opinions of the state agency reviewing doctors, Dennis and Greenspan, as reasons to reject Dr. Kishiyama's conclusions. The findings of Dr. Dennis and Dr. Greenspan were that, at the time of their respective reviews of records on Petitioner, in July and November of 2013, Petitioner's depression was controlled with medication, and his cognitive abilities were intact. (AR 74-75; 84-85.) They found Petitioner was stable and that his symptoms would continue to decrease in severity over the course of the next 12-month period. *Id.* Respondent alleges these opinions directly conflict with Dr. Kishiyama's finding, in March of 2015, that Petitioner's condition was worsening and that his symptoms prevented him from being able to engage in gainful employment on a sustained basis. *Id.* at 442-46.

The dates of the findings alone—2013 for the state agency reviewers and 2015 for Dr. Kishiyama—demonstrate that the ALJ's reasoning is not sound. As reflected in the treatment notes, *supra* note 2, Petitioner's symptoms waxed and waned over time, as did his response to medication management. Significantly, notes leading up to the spring of 2015, when Dr. Kishiyama's opinion was written, *do* support the conclusion that Petitioner's symptoms were worsening in severity and duration. Contrary to the predictions of the state agency reviewers in 2013, Petitioner's medication had not produced continued improvements. The fact that a person suffering from depression

makes some improvement "does not mean that the person's impairment [ ] no longer seriously affect[s] [his] ability to function in a workplace." *Holohan*, 246 F.3d at 1205; see also *Ryan*, 528 F.3d at 1200–01.6.

The ALJ used the same misguided approach to discredit the opinion of Dr. Casper, consultive psychological examiner. Dr. Casper performed a mental status examination of Petitioner on July 23, 2013, and produced a report dated June 6, 2013. (AR 326-331.) Therein, Dr. Casper found Petitioner would decompensate easily and for long periods of time, and that he often failed to follow through on tasks. As with similar evidence in Dr. Kishiyama's opinion, the ALJ discredited this evidence because it appeared to be based primarily on Petitioner's self-reports. (AR 26.) This was an error. Therefore, in sum, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence sufficient to reject the opinions of Petitioner's treating psychiatrist and the consultive psychological examiner.

**3.      Residual Functional Capacity**

An ALJ may rely on a vocational expert's testimony that is based on a hypothetical that "contain[s] all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). However, if the hypothetical is based on an RFC assessment that excludes some of Petitioner's limitations, the vocational expert's testimony will have no evidentiary value. *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1166 (9th Cir. 2008). Further, when an ALJ determines RFC, the ALJ must consider each of the

claimant's medically determinable impairments, including non-severe impairments. 20

C.F.R. § 404.1545(a)(2).

Here, the ALJ provided two different hypotheticals to the vocational expert. The

first inquired whether a person with the past work history of Petitioner, who had

limitations on his ability to interact with others, including supervisors, maintain

concentration, persistence, and pace for certain tasks, and limitations on ability to make

difficult decisions, would be able to perform jobs in the national economy. (AR 63-64.)

The vocational expert's opinion was that such a person would be able to do so, providing

the examples of light work ultimately adopted by the ALJ— hand launderer, garment

folder, and touch up inspector. (AR 64.)

The second hypothetical inquired regarding whether a person who was off-task for

twenty percent of the time during an eight-hour work day would be able to perform jobs

in the national economy. (AR 65.) The vocational expert's opinion was that such person

would not be able to do so. *Id.* The expert explained: "That would be too high a

percentage to be off task and would preclude the jobs I identified and I believe all full-

time jobs in the national economy." *Id.*

Although the ALJ adopted the vocational expert's opinion regarding an individual

with the limitations set forth in the first hypothetical, as explained above, the ALJ

improperly discredited Petitioner's testimony and gave insufficient weight to the opinions

of Petitioner's treating psychiatrist and the consultive psychological examiner.

Accordingly, the ALJ's reliance on the vocational expert's opinion that Petitioner could

perform light work, as so limited, was in error. *Carmickle,* 533 F.3d at 1166; *Bayliss,* 427 F.3d at 1217.

**4.**     **Credit-as-True**

Petitioner asserts that, if the testimony of Petitioner and the opinions of Dr. Kishiyama and Dr. Casper are credited as true, Petitioner meets the definition of disability and benefits should be awarded. Therefore, the question is whether remand for proceedings to further develop the record or for an award of benefits is appropriate. *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir.1998). To apply the credit-as-true standard and award benefits, a court must find: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). In applying this standard, the Court must also ensure that the record, when taken as a whole, creates no serious doubt that a claimant is not disabled. *Id.* at 1021.

Petitioner satisfies all three conditions of the credit-as-true standard. First, it is unnecessary to further develop the record or have additional administrative proceedings. Second, as set forth in detail above, the ALJ failed to supply legally sufficient reasons to discredit Petitioner's testimony and the opinions of treating psychiatrist Dr. Kishiyama, and consultive psychological examiner, Dr. Casper, all of which the Court credits as true.

Dr. Kishiyama found Petitioner to be disabled, citing to the severity and duration of Petitioner's periods of decompensation, as well as his unfavorable response to treatment. Accordingly, Petitioner satisfies the three requirements of the credit-as-true standard. Further, the Court finds that, when viewed as a whole, the record does not raise any serious doubt that Petitioner was disabled. A remand for benefits calculation and award is thus required. *Garrison*, 759 F.3d at 1023.

## CONCLUSION

The Court finds that the ALJ erred in rejecting Dr. Kishiyama and Dr. Casper's opinions, and failed to provide clear and convincing reasons to discredit Petitioner's testimony. Therefore, the Court reverses the ALJ's decision, and remands, with instruction to calculate and award benefits to Petitioner.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Plaintiff's Petition for Review (Dkt. 1) is **GRANTED** and the decision of the Commissioner is **REVERSED**.

2)      This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: March 26, 2018

Candy W. Dale
U.S. Magistrate Judge